This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38581

**A CLASS RV STORAGE,**

Protestant-Appellant,

v.

**NEW MEXICO TAXATION &
REVENUE DEPARTMENT,**

Respondent-Appellee,

**IN THE MATTER OF THE PROTESTS
TO ASSESSMENTS ISSUED UNDER
LETTER ID NO. L2055615280, LETTER
ID NO. L0446191408, and LETTER ID
NO. L2042133296.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE
Ignacio V. Gallegos, Hearing Officer**

Sanchez, Mowrer & Desiderio, P.C.
Robert J. Desiderio
Albuquerque, NM

Betzer, Roybal & Eisenberg LLC
Benjamin C. Roybal
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Kenneth E. Fladager, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** Taxpayers[1] appeal from a decision and order of the Administrative Hearings Office upholding the New Mexico Taxation and Revenue Department's (the Department) assessment of gross receipts tax on their receipts from the rental of large-vehicle storage spaces. The issue on appeal is whether the Administrative Hearing Officer erred in concluding that the agreements between Taxpayers and their tenants were licenses rather than leases, such that Taxpayers were improperly claiming a deduction from gross receipts tax for the lease of real property under NMSA 1978, Section 7-9-53(A) (1998). We reverse.

**BACKGROUND**

**{2}** The factual findings of the hearing officer are undisputed. Taxpayers rent out RV storage spaces for " 'dead storage' of vehicles, including recreational vehicles, campers, fifth wheels, boats, and other similar items." Taxpayers entered into written agreements with tenants and collected rent in exchange for use of a designated space at the storage facility on a month-to-month basis. Taxpayers' properties are open-air dirt lots enclosed by perimeter fences and accessible only through a locked gate; tenants have twenty-four hour access via an electronic key fob that opens the gate using an individualized code. "[T]he individual rental spaces [are] alpha-numerically identified in the rental contracts[ and are] marked at the facility with fixed signs and survey whiskers embedded in the ground[] showing the boundaries of the designated [space]."

**{3}** The Department conducted audits for each of the three facilities for filing periods beginning in 2011 and ending in 2017. During that time, Taxpayers had deducted the receipts from their rental activities pursuant to Section 7-9-53(A), which provides that "[r]eceipts from the sale or lease of real property . . . may be deducted from gross receipts." The Department's audits concluded that each facility "was improperly deducting recreational vehicle (RV) parking spaces as real property leases on their Gross Receipts Tax reports for the applicable period." The Department issued a notice of assessment to Taxpayers for gross receipts tax, penalties, and interest. As the basis for its assessments, the Department stated that "[t]he vehicles, boats, RVs, and trailer parking are located outside where anyone can access the property and is not a self-contained unit; therefore, the customer does not have exclusive possession, use or access to the property."[2]

**{4}** Taxpayers protested the assessment and, after a hearing on the matter, the hearing officer affirmed the Department's position that the revenue was earned from granting licenses, not leases. The hearing officer issued a forty-page decision and order in which the hearing officer concluded that although "[t]he parties to the rental

---

1Taxpayers are the owners of three separate storage facilities: A Class RV Storage, A Class RV Storage at Journal Center, and A Class RV Storage at Osuna. At the time of the audits, each storage facility was set up as a separate entity, but all three shared common ownership and management. Accordingly, the cases were consolidated and the hearing officer's decision and order applies to all three storage facilities.
2"[T]he Department granted the Taxpayers' deductions for rented spaces that were fully enclosed."

agreements at issue here intended to create leases of real property, . . . [t]he physical attributes of the open-air rental spaces prevented the formation of a lease for lack [of] partition and of exclusivity . . . [and] prohibited the Taxpayers from granting exclusive possession, use, and access to the rental spaces." The hearing officer ordered that Taxpayers were liable for the underlying gross receipts tax and interest. Taxpayers appeal.

**STANDARD OF REVIEW**

{5}     "Generally, this Court reviews a hearing officer's decision regarding a protestant's tax liability for the limited purpose of determining whether it is: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." *Quantum Corp. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (internal quotation marks and citation omitted). To the extent that our review involves "the application of law to undisputed facts, the review is de novo." *Grogan v. N.M. Tax'n & Revenue Dep't*, 2003-NMCA-033, ¶ 10, 133 N.M. 354, 62 P.2d 1236.

**DISCUSSION**

{6}     Taxpayers assert that they are entitled to a deduction under Section 7-9-53(A) because their agreements with their tenants constituted leases. Taxpayers contend the hearing officer erred in concluding that the arrangements were not leases solely based on the physical attributes of the spaces—specifically, that the absence of an enclosed structure prevented Taxpayers from providing exclusive possession. We agree.

{7}     A "lease" has been defined as "an arrangement whereby, for a consideration, the owner of property grants another person the exclusive right to possess and use the property for a definite term[.]" NMSA 1978, § 7-9-3(F) (2007, amended 2021). This Court has also said that a lease is "an agreement under which the owner gives up the possession and use of his property for a valuable consideration and for a definite term." *Quantum Corp.*, 1998-NMCA-050, ¶ 9 (internal quotation marks and citation omitted); *see id.* ¶ 21 (noting that "(1) stipulation for rent such as payment for the transfer of possession and (2) a term; and absence of (1) limitation on exclusive possession and control of the premises, and (2) a right in the owner to revoke the permit to use at any time, are factors indicating existence of a lease"). A license, on the other hand, is defined as "an arrangement whereby, for a consideration, the owner of property grants another person a revocable, non-exclusive right to use the property[.]" Section 7-9-3(G). "A license does not create an interest in land; it is similar to a tenancy at will[,]" *Quantum Corp.*, 1998-NMCA-050, ¶ 10, and amounts to "permission by a competent authority to do some act which without such authorization would be illegal, or would be a trespass or a tort." *N.M. Sheriffs & Police Ass'n v. Bureau of Revenue*, 1973-NMCA-130, ¶ 7, 85 N.M. 565, 514 P.2d 616 (internal quotation marks and citation omitted). In essence, "a lease gives to the tenant the right of possession against the world, while a license creates no interest in the land, but it is simply the authority or power to use it in some specific way." *Grogan*, 2003-NMCA-033, ¶ 27 (internal quotation marks and

citation omitted); *see id.* (affirming a hearing officer's determination that the agreements between the retail store owner and the cigarette manufacturers were licenses because the representatives of the manufacturer did not have exclusive possession over their counter and shelf displays); *Quantum Corp.*, 1998-NMCA-050, ¶ 21 (holding that "[t]he payment of rent, possession for definite periods of time, exclusive possession of the floor safes and secure storage closets, and the inability of [t]axpayer to revoke at will favor a lease").

**{8}** "Under general law, the character of the instrument is not controlled by its form, but from the intention of the parties as shown by the contents of the instrument." *Quantum Corp.*, 1998-NMCA-050, ¶ 12 (internal quotation marks and citation omitted). In this case, the hearing officer carefully evaluated the evidence in light of common indicia of a lease: (1) exclusive right to occupy; (2) the term of occupancy and rent; (3) maintenance; (4) revocability; (5) specificity of the property; (6) intent, (7) use restrictions; and (8) the ability to assign, succession, and mortgageability. Of these factors, the hearing officer found that the first factor—the exclusive right to occupy—weighed heavily toward the conclusion that the agreements were leases, noting that "[t]here is only one tenant and one rental agreement for each space. By assigning a space, the agreements give the right to restrict other's entry not by means of an individually encased space secured by one's own padlock, but by informing the management of the trespass, or by going to a competent authority to report the violation and enforce the right." The hearing officer found that the second through sixth factors all weighed in favor or slightly in favor of finding a lease, and the seventh factor weighed neutrally. As for the final factor, the hearing officer concluded that the assignability and succession weigh slightly in favor, whereas the lack of mortgageability weighs slightly against finding a lease. In the end, the hearing officer's decision and order contains a conclusion of law that "[t]he parties to the rental agreements at issue here intended to create leases of real property[.]"

**{9}** In spite of this, the hearing officer concluded that the agreements were licenses because "the physical attributes of the property, most notably the absence of enclosure of that property, suggest the common law requirements of a lease have not been met[;] therefore the agreement can only be a mere license to use the space." The hearing officer noted that although he viewed the matter as a close call, he "agree[d] with the Department, since the absence of any enclosed structure prevents the Taxpayer[s] from providing exclusive possession, use and access to the units, therefore the denial of a deduction of receipts under Section 7-9-53 was proper."

**{10}** Taxpayers argue that there is no requirement in law that an owner must "preclude the world from physically entering the space" in order to grant the right of exclusive possession necessary to establish a lease. The Department, apparently abandoning its former position, has advanced no argument or authority in support of the proposition that the lack of an enclosure is relevant, much less dispositive, when the great weight of the evidence indicates that the parties intended a lease. Our own research was similarly fruitless. Given the lack of authority indicating otherwise, we

conclude that physical barriers or enclosures were not required for the creation of leases in this case.

**{11}** The Department, instead, urges this Court to uphold the hearing officer's ruling as right for any reason, arguing that "notwithstanding the Hearing officer's focus on physical barriers" the factual record supports the ultimate conclusion that the agreements were licenses. We disagree. That conclusion rested exclusively on the premise that the physical attributes of the properties prevented Taxpayers from forming a lease—a proposition we have rejected. The hearing officer's remaining, unchallenged findings expressly weigh in favor of finding that the agreements were leases, and putting aside the hearing officer's erroneous conclusions of law, the remaining conclusions are as follows:

> C.     The parties to the rental agreements at issue here intended to create leases of real property, "an arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property." . . . Section 7-9-3(E).

> D.     The rental agreements at issue here have no express or implied right of revocation in favor of the landowner, although the landowner maintains some degree of control over the premises.

Accordingly, we hold that the agreements that are the subject of this appeal are "leases" within the meaning of Section 7-9-53(A).

**CONCLUSION**

**{12}** We reverse the hearing officer's determination that Taxpayers' receipts for the lease of recreational vehicle parking spaces are not deductible under Section 7-9-53(A).

**{13}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**